[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 221 
OPINION
(Mother) is the mother of Neil D. (born July 1998), R.D. (born July 2000), and Nathan D. (born January 2002). Mother and the children, in a separate filing, appeal from the juvenile court's order requiring Mother to complete an inpatient drug treatment program as part of the disposition case plan. The father of the children, K.D. (Father), is not a party to this appeal. We dismiss the children's appeal for lack of standing and affirm the order.
 FACTUAL AND PROCEDURAL BACKGROUND
On August 16, 2006, Mother delivered a premature baby, Angel R., who died shortly after birth. Mother tested positive for methamphetamines and admitted to using drugs during her pregnancy and off and on for the past nine years. The medical examiner determined that Mother's drug use might have contributed to the baby's death. The following day, the Los Angeles County Department of Children and Family Services (the Department) detained Neil, R., and Nathan, and placed them together in a foster home. That same day, Mother voluntarily enrolled in a six- to nine-month residential treatment program at Pacifica House Recovery Center (Pacifica House) in El Segundo.
On August 21, 2006, the Department filed a petition pursuant to Welfare and Institutions Code section 300, subdivision (b), [1] which alleged that Mother's history of substance abuse rendered her incapable of providing regular care and supervision for the children. The petition also alleged that Mother and Father had a history of domestic violence and that Father had been convicted of making terrorist threats against Mother. On September 18, 2006, Mother *Page 222 
pled no contest to the petition and the juvenile court sustained the allegations of the petition. The children were placed in the maternal grandparents' home in San Pedro. Mother was allowed visitation in the grandparents' home and visits in accordance with the rules and regulations of the drug program.
The social worker's report prepared for the September 18 hearing stated that Mother was visiting the children every other weekend at Pacifica House from noon to 3:00 p.m. The children told the social worker that they were happy with the visits. The children's maternal grandmother said that Nathan cried at the beginning and at the end of the visit. Neil was happy to see his mother and appeared more so after visiting with her. R. appeared to want Mother to herself.
An amended petition alleged that Mother caused Angel's death through abuse or neglect pursuant to section 300, subdivision (f)- A hearing on the amended petition was scheduled for October 16, 2006.
The social worker's report prepared for the October 16, 2006 hearing recommended that reunification services not be provided to Mother. The report listed Mother's address as Pacifica House, but did not provide any further information on the program. The report stated that Mother had three other pregnancies that had resulted in premature deaths. Mother told the social worker she had been so involved with drugs that she had not sought prenatal care during her pregnancy with Angel. She admitted she had lied to her parents about her drug use.
At the disposition hearing, the Department argued that Mother would be best served by an inpatient drug rehabilitation program. The court found the minors to be dependent children of the court pursuant to section 300, subdivision (b), and found by clear and convincing evidence that there was a substantial risk to the children. It ordered Mother to participate in a drug rehabilitation program approved by the Department with random testing to demonstrate sobriety. The court made the following order: "In order to reunify with minor(s), the Mother and Father must demonstrate the ability to care for the minor(s), to meet emotional and physical needs of the minor(s) and to maintain stable housing. Additionally, Mother and Father must visit on a consistent and regular basis with the minor(s)." It also ordered that Mother receive individual counseling in parenting, domestic abuse, and drug abuse. The matter was continued to November 30, 2006, to address whether Mother's drug treatment would be inpatient or outpatient.[2] *Page 223 
A letter from Pacifica House dated October 16, 2006, stated that all of Mother's drug tests were negative and that Mother was "currently attending parenting classes, re-building healthy relationships skills, relapse prevention groups, anger management, Life skills classes along with focusing on maintaining her individual treatment goals and objectives. Her attendance in groups are excellent, her behavioral and attitude is fair, and her participation is good. She has [b]een willing to get more information about maintaining her sobriety, which will come in time with completing this program and maintaining a sober support system."
On November 30, 2006, the court announced its tentative ruling to order an inpatient program and heard extensive argument from counsel.[3] The court then ruled in favor of an inpatient program, as follows: "You're basically stating that somebody who has a significant substance abuse problem has the capacity and/or clarity to determine what kind of program would be best for herself or himself. And I'm not so sure that a person who is an addict is, perhaps, has the freedom of will to make the best decision as to what would be the most or the best way to eliminate the addictions so that she can reunite or he can reunite and safely care for the children, [¶] . . . [¶] We've had lots of cases where we terminate jurisdiction and then there's a refiling several months down because they've relapsed and gone back to using drugs. . . . What the court is trying to do, what the Department is trying to do is figure out what is the plan that would most likely succeed in reunifying Mother with her children. Department has recommended residential treatment, [¶] . . . [¶] [L]ook at Mother's admitted history. It's clear that she needs intensive services and I don't think those intensive services could be provided through outpatient. You know, we probably — maybe this needs — you need to take it up on appeal." *Page 224 
The minute order for that hearing stated, "The mother is to complete a DCFS approved in-patient drug program" and left all other prior orders in full force and effect.
Mother contends that the juvenile court did not have the authority to order her into an inpatient program because it constitutes involuntary incarceration. The children join in Mother's arguments and also contend that the juvenile court violated "the separation of powers doctrine" by ordering Mother to complete the inpatient program, as the decision should have been left to the discretion of the Department.[4]
 DISCUSSION
We start by addressing the Department's claim that appellants lack standing to bring this appeal. It argues neither Mother nor the children is an aggrieved party. We agree the children lack standing. The trial court's order that Mother complete an inpatient drug program does not affect the interests of the children, and their counsel has not attempted to persuade us otherwise. On September 18, 2006, the children were placed with the maternal grandparents and their visits with Mother were ordered monitored. The order in question, issued November 30, 2006, did not alter the orders in effect as to the children. We conclude the children are not aggrieved parties. (In re Crystal J. (2001) 92 Cal.App.4th 186, 189
[111 Cal.Rptr.2d 646].) However, we disagree that Mother lacks standing. Her claim of coerced incarceration raises a constitutional issue. Moreover, the challenged order arguably affects Mother's task of reunifying with her children. Her contention that the inpatient program adversely impacts her ability to complete the other components of the case plan, if true, is best addressed now.
Pursuant to section 362, the court may make "any and all reasonable orders to the parents or guardians" to ameliorate the conditions that made the child subject to the court's jurisdiction. (§ 362, subd. (c); see In re Basilio T. (1992) 4 Cal.App.4th 155, 172 [5 Cal.Rptr.2d 450].) This provision and others in the Welfare and Institutions Code "have been broadly interpreted to authorize a wide variety of remedial orders intended to protect the safety and well-being of dependent children. . . ." (In re Carmen M. *Page 225 
(2006) 141 Cal.App.4th 478, 486 [46 Cal.Rptr.3d 117].) Section 362.1, subdivision (a)(1)(B) also provides that "No visitation order shall jeopardize the safety of the child." "The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion. [Citations.] The court's determination in this regard will not be reversed absent a clear abuse of discretion. [Citation.]" (In reJose M. (1988) 206 Cal.App.3d 1098, 1103-1104 [254 Cal.Rptr. 364].)
Here, the court's order must be evaluated in light of the fact that Mother's drug addiction is the primary threat to her children's safety and quality of life. Our courts have recognized that severe measures are necessary to prevent drug usage from undermining the prospect of the successful reunification of families.
In Sara M. v. Superior Court (2005) 36 Cal.4th 998 [32 Cal.Rptr.3d 89,116 P.3d 550], a mother with a substance abuse problem was prohibited under the reunification plan from visiting her children unless she was free of drugs and alcohol. The Supreme Court held that the restriction was reasonable to protect the well-being of the children, citing In reChristopher H. (1996) 50 Cal.App.4th 1001, 1007-1008 [57 Cal.Rptr.2d 861], and section 362, subdivision (c). (Sara M. v.Superior Court, supra, 36 Cal.4th at p. 1018.) With this background, we consider Mother's arguments.
Mother faults the juvenile court for ordering that she reside in a drug program when a less restrictive alternative was available. She takes issue with the court's conclusion that the more intensive treatment available in an inpatient program best addressed her drug problem. She urges that the court did not rely on a drug rehabilitation expert prior to making its decision, and that it ordered a live-in program without considering the impact on Mother, her family, and her children. Mother argues that the court was required to consider other less restrictive alternatives. She is incorrect. The court had an obligation to determine the best way to tackle Mother's addiction.
Here are the facts that confronted the court. Mother, a longtime drug addict, pled no contest to the allegation in the petition that her drug usage rendered her incapable of providing regular care and supervision for the children. Mother admitted that she lied to others regarding her drug use during pregnancy and her addiction led to her failure to seek prenatal care. In fact, the medical examiner found that her drug usage may have contributed to Angel's death. After Mother voluntarily enrolled in the live-in program at *Page 226 
Pacifica House, she began participating in self-help classes and addressing her addiction. She showed a willingness to maintain her sobriety and was progressing well. By the time of the court's order, she had completed three months of what was originally a six- to nine-month program. Given Mother's extreme addiction and her inability to see the danger it presented to her children, both born and unborn, the court's order constitutes a reasonable attempt to resolve the problem. We find no abuse of discretion.
Mother argues that the inpatient treatment program is the equivalent of incarceration. We disagree. Although she claims that she is being forced to live in the drug program, the decision to complete this component of the case plan remains in her hands. She is free to leave the program at any time. It is clear that Mother may not be compelled to accept reunification services. (In re Christina L. (1992) 3 Cal.App.4th 404,414 [4 Cal.Rptr.2d 680].) Nonetheless, she complains that it is unfair to ask her to accept "involuntary incarceration" or risk losing her children. Not so. She faces the same consequences as any other parent who fails to comply with his or her case plan. Her assertion that it is unjust to compel her to address the very problem that caused her children to become dependents of the court rings hollow. As we have already determined that the juvenile court's order is reasonable under the circumstances, Mother is entitled to no relief.
Mother contends that by being forced to remain in an inpatient program, she is hampered from completing the other components of her case plan. Her claim is unpersuasive. She asserts that she is not able to visit the children as often as is necessary, but she fails to show how the program has interfered with court-ordered visitation. In fact, the record reflects that the program allowed Mother to leave and visit the children at a location near the facility. She argues that the program prevents her from working and showing that she can provide a stable environment for her children. However, the letter from Pacifica House stated that "[t]he final phase of treatment involves acquiring and maintaining employment, opening a bank account, and gradual re-entry into society. This is a very comprehensive program that involves stabilizing financial matters, building sober support, 12 step community involvement, and after-care groups facilitated by staff members." Mother concedes that she intends to complete the program. If anything, the program appears designed to enable Mother to gain the skills necessary to regain custody of her children. As we have said, the choice is hers. *Page 227 
 DISPOSITION
The order of November 30, 2006, directing Mother to complete an inpatient drug rehabilitation program approved by the Department is affirmed; the children's appeal is dismissed.
Epstein, P. J., and Willhite, J., concurred.
[1] All further statutory references are to the Welfare and Institutions Code.
[2] There was no finding made on the section 300, subdivision (f) allegation.
[3] The court made the following statements during argument: "The court needs to do what's in the best interest of the child in order to effect reunification. There's a balancing going on . . . regarding limitations on Mother's freedom, so to speak, and appropriate reunification services in best interest of the child. I believe the best interest of the children trump the mother's interest in not having to do a residential program in light of her special needs, her history, and the concerns about there being appropriate reunification services provided to her. The court's tentative is to require Mother, as part of the reunification plan, to enroll in a residential program. I believe that we can effect visitation in the residential program that will accommodate the needs of the family, but that's the plan most likely to accomplish reunification within the statutory period. Anything less than that is likely to fail." "The problem is that Mother has a serious problem. [¶] . . . [¶] Long standing. I think she's addicted to methamphetamine, which is very, very difficult to break . . . and the bottom line is we want the Mother to be successful with reunification. We want her to be able to kick her addictions."
[4] Although the order was made in November 2006, there is nothing in the record to indicate whether Mother has since complied with the order. There was no request for a stay pending appeal. *Page 228