Filed 12/30/14  In re Jason R. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re JASON R. II, a Person Coming Under the Juvenile Court Law. | |
| | D066426 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. CJ1167) |
| v. | |
| JASON R., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Patti L. Dikes, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Erica R. Cortez, Senior Deputy County Counsel, for Plaintiff and Respondent.

Jason R. contends on appeal that the juvenile court erred in proceeding with a jurisdictional hearing in his absence and that insufficient evidence supported the court's jurisdictional finding. Jason also asserts insufficient evidence supported the court's order removing his son, Jason R. II (J.R), from his custody because less drastic alternatives were available. Finally, Jason contends the juvenile court abused its discretion by ordering him to participate in substance abuse treatment. We affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

The San Diego County Health and Human Services Agency (Agency) filed a petition under Welfare and Institutions Code section 300, subdivision (b)[1] on behalf of J.R. when both J.R. and his mother, Ashley H., tested positive for amphetamine and marijuana at J.R.'s birth. The staff at the hospital where J.R. was delivered also reported that Jason and Ashley smelled strongly of marijuana and appeared to be under the influence of the drug when they arrived at the hospital. When interviewed by the Agency's social worker, Ashley admitted to using methamphetamine and marijuana throughout her pregnancy, and that she had used methamphetamine as recently as two weeks before J.R. was born. Ashley also did not receive any prenatal care.

---

1       All statutory references are to the Welfare and Institutions Code.

2

Jason was inconsistent in his statements to social workers about his own drug use, first denying any use then admitting to using marijuana to deal with pain from a dislocated shoulder. Jason was aware that Ashley used marijuana during her pregnancy but claimed he did not know about her methamphetamine use. Jason's failure to react to the news that Ashley used methamphetamine while pregnant raised concerns for the hospital staff. Jason told the social worker that he did not think Ashley's drug use while pregnant had a negative impact on J.R. Jason and Ashley also made odd statements to social workers that raised concerns about their mental health. For example, Jason told the social worker he was promised to go to heaven and Ashley told the social worker that Jason knew when people were going to die because he saw them glowing before they died.

The social worker asked Jason to drug test three days after J.R. was born, but Jason failed to appear for the scheduled test, telling the social worker the testing site was closed by the time he arrived. Jason did drug test four days later and the test result was negative. Neither parent attended the initial detention hearing because Ashley was hospitalized for a medical condition. At the hearing, the court found that the Agency had made a prima facie showing that removal was necessary and ordered that J.R. be detained in a licensed foster care home or in an approved home of a relative. The court also continued the hearing to the following day at the request of Ashley's counsel.

Both parents appeared the next day telephonically. At the hearing, the court appointed counsel for Jason, confirmed its orders from the previous day and ordered that both parents receive liberal supervised visits and voluntary services. The court

3

admonished Jason and Ashley to "keep the court, your attorney, and the social worker aware of [their] current address and phone numbers." The court also described the seriousness and potential consequences of the proceedings and both parents acknowledged their understanding.

The Agency's report for the jurisdiction and disposition hearing indicated J.R. had been placed in a licensed foster home after he was discharged from the hospital and was doing well. Ashley continued to have medical difficulties and was in and out of the hospital. Jason was unemployed but was looking for work and helping to care for Ashley. The Agency's social worker reported she had difficulty contacting Jason and that Jason had told the social worker he doesn't check his voice mail because he doesn't have time. Jason had not enrolled in any of the voluntary services suggested by the Agency.

Jason and Ashley both attended the jurisdiction and disposition hearing and were represented by counsel. Ashley contested the truth of the allegations of the need for removal of J.R. and objected to the psychiatric or psychological evaluation that was recommended for her by the Agency. Ashley's counsel indicated she anticipated calling the social worker as a witness at trial. Jason's counsel joined in Ashley's request for a trial date and added Jason as a possible witness. The court set a settlement conference in a different juvenile court department and a later trial date in its department. The court stated Jason and Ashley needed to be present both at the settlement conference and the trial and explained that "[b]oth of you should understand that you need to be present at that settlement conference. . . . [¶] It is important that you be present because the judge could hold the trial at that time."

4

Jason and Ashley did not appear at the settlement conference and did not contact anyone about the reason for their absence. The Agency's counsel stated that the social worker, who was present, had spoken with the parents and had offered to drive Jason and Ashley to court. According to the social worker, both parents were aware of the conference and Ashley's grandmother was planning to drive them. The social worker also had called Ashley, Jason and Ashley's grandmother the morning of the hearing, but was not able to reach them. Ashley's counsel objected to proceeding with the jurisdiction and disposition hearing after the settlement conference, stating that she did not have authority to proceed on Ashley's behalf and that she was alarmed by Ashley's absence. Jason's counsel stated: "I would join in [Ashley's counsel's] comments on behalf of the father," but did not provide any independent reason for objecting to the court proceeding. Neither parents' counsel indicated they planned to offer any evidence in addition to the Agency's reports.

The juvenile court then proceeded with the jurisdiction and disposition hearing, finding that notice had been given and that J.R. was a child described by section 300, subdivision (b). The court stated "obviously, if there's some unusual circumstance there would be a motion to set this aside." The court declared J.R. a dependent, removed him from Jason's and Ashley's custody, and gave the Agency authority to find a suitable placement for J.R. The court further found reasonable efforts had been made to prevent or eliminate the need for removal of J.R. from his parents' custody. The court ordered

5

reunification services for both parents, including liberal visitation with the possibility of unsupervised and overnight visits. Jason timely filed a notice appeal.[2]

DISCUSSION

I

Jason contends that the juvenile court's decision to proceed with the jurisdiction and disposition hearings in his absence after the settlement conference was a violation of his due process rights. He further argues that the juvenile court lacked the authority to proceed with the hearings because a local rule prohibits addressing the merits of a case at a settlement conference.

Due process requires notice that is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of an action and afford them an opportunity to object. (*In re Melinda J.* (1991) 234 Cal.App.3d 1413, 1418; *In re Justice P.* (2004) 123 Cal.App.4th 181, 188.) Due process is a flexible concept that depends on the circumstances of the case and a balancing of various factors. (*In re Earl L.* (2004) 121 Cal.App.4th 1050, 1053.) Here, Jason had *actual notice* that the court could proceed to the contested jurisdiction and disposition hearings after the settlement conference if the case did not settle. Jason and his counsel were present at the initial jurisdiction and disposition hearing when the juvenile court stated explicitly that if no settlement was reached the court could proceed to the jurisdictional and disposition issues

---

2    Ashley has not challenged the jurisdiction and disposition orders and is not a party to this appeal.

on the date of the settlement conference. The court was clear that Jason and Ashley needed to be present at the conference for this reason.

Additionally, Jason was represented by counsel at the contested jurisdiction and disposition hearing and had the opportunity to put on evidence and cross-examine the Agency's social worker, who was also present. The juvenile court gave Jason the opportunity to bring a motion to set aside the jurisdictional and dispositional findings if there were extenuating circumstances that prevented the parents from being present. Jason has provided no explanation for his absence at the conference and made no motion below to set aside the jurisdictional and dispositional order. Under these circumstances, Jason's due process rights were not violated.

Jason's argument concerning the court's local rule also lacks merit. The rule, Superior Court San Diego County, Local Rules, rule 6.1.9(B) entitled "Settlement Conference," provides:

> "If a matter is set for a contested hearing, the court may order the parties and their counsel to appear at a settlement conference, and may schedule dates for both the settlement conference and the hearing. (The hearing will proceed as scheduled only if the matter does not settle.). . . Unless expressly excused by the court, if any other party fails to appear at the settlement conference, the court may issue a bench warrant for that party."

The final subdivision of the rule also provides that "[i]f a matter is not resolved at the settlement conference, the court will address pretrial issues." (*Id.*, subd. (E).) The rule, however, also states that "[t]he court need not follow the procedures outlined in this rule where there is clear evidence that a settlement conference will not resolve the matter." (*Id.*, subd. (A).)

7

This rule gives the court authority to issue a criminal bench warrant if a party fails to appear, but does not limit the court's authority to proceed with a contested jurisdictional and dispositional hearing immediately after the conference. To the contrary, the rule states it can be disregarded by the court if there is evidence that a settlement cannot be reached. (Super. Ct. San Diego County, Local Rules, rule 6.1.9.) Jason and Ashley's failure to appear or explain their absence at the settlement conference was evidence that settlement was unlikely. The juvenile court, therefore, properly proceeded to the contested jurisdiction and disposition hearings.

II

Jason next contends that insufficient evidence supported the court's jurisdictional finding under section 300, subdivision (b) because there was no evidence J.R. suffered any harm. In reviewing the sufficiency of the evidence on appeal, we consider the entire record to determine whether substantial evidence supports the juvenile court's findings. We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence. Rather, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if other evidence supports a contrary finding. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53.) The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the order. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

Section 300, subdivision (b) provides a basis for juvenile court jurisdiction if the child has suffered, or there is a substantial risk the child will suffer, serious physical harm

8

or illness as a result of the parent's failure to adequately supervise or protect the child or provide adequate medical treatment. In enacting section 300, the Legislature intended to protect children who are currently being abused or neglected, "and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2.) The Legislature has emphasized that a child's well-being depends on a "home environment free from the negative effects of substance abuse . . . ." (*Ibid*.) In this regard, the court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child. (*In re Heather A*. (1996) 52 Cal.App.4th 183, 194-196.) Further, the court may consider past events when determining whether a child presently needs the juvenile court's protection. (*In re Diamond H*. (2000) 82 Cal.App.4th 1127, 1135.)

In this case, both J.R. and Ashley tested positive for amphetamines and marijuana at J.R.'s birth and Ashley admitted to using both drugs throughout her pregnancy. Jason also admitted he was aware of Ashley's marijuana use during the pregnancy and that he used the drug. Although Jason tested negative for drug use several days after the birth, he failed to test when he was first asked and hospital staff believed both parents were under the influence of drugs when Ashley was admitted to the hospital to deliver J.R. The hospital staff and the social worker were also concerned about possible mental illness of both parents, as well as Jason's minimization of the consequences to J.R. of Ashley's drug use.

This evidence was sufficient to support the court's finding that J.R. had already suffered physical harm as result of Ashley's drug use while pregnant and that J.R. was at

9

risk of additional harm based on both parents' drug use and Jason's denial of the negative consequences of such activity. (See *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1218-1220 [evidence of mother's use of cocaine and marijuana while pregnant and father's use of marijuana sufficient to support jurisdiction finding] and *In re Troy D.* (1989) 215 Cal.App.3d 889, 899 ["prenatal use of dangerous drugs by a mother is probative of future child neglect"].) Substantial evidence supports the court's jurisdictional findings.

III

Jason next challenges the sufficiency of the evidence to support the court's dispositional order. He asserts there was no evidence that removing J.R. from his custody was necessary to protect J.R. from harm, and claims that there were reasonable alternatives to removal.

Before the court may order a child physically removed from his or her parent, it must find, by clear and convincing evidence, the child would be at substantial risk of harm if returned home and there are no reasonable means by which the child can be protected without removal. (§ 361, subd. (c)(1); *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.) The jurisdictional findings are prima facie evidence the child cannot safely remain in the home. (§ 361, subd. (c)(1).) The parent need not be dangerous and the child need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child. (*In re Diamond H.*, *supra*, 82 Cal.App.4th at p. 1136; *In re Jamie M.* (1982) 134 Cal.App.3d 530, 536.) In determining whether removal is warranted, the court may consider the parent's past conduct as well as present

10

circumstances. (*In re S.O.* (2002) 103 Cal.App.4th 453, 461.) We review the court's dispositional findings for substantial evidence. (*In re Kristin H.*, at p. 1654.)

The court removed J.R. from parental custody because Jason's and Ashley's drug abuse impacted their ability to properly parent. Jason was unable to provide J.R. with a home "free from the negative effects of substance abuse." (§ 300.2.) The evidence discussed above supported a finding that J.R. was at substantial risk of harm if returned home.

Jason asserts that the juvenile court should have placed J.R. with him and ordered the Agency to provide family maintenance services and/or placed conditions on Jason's custody, such as a requirement that he not leave the child alone with Ashley. Jason contends he was cooperative and willing to participate in services. This contention is not supported by the record. Jason failed to keep in contact with the Agency's social worker and his own counsel, and demonstrated an overall disinterest in the proceeding. Jason's substance abuse and mental health status needed to be addressed before J.R. could safely be returned to his care. Sufficient evidence supported the juvenile court's removal finding.

IV

Finally, Jason contends the court abused its discretion by ordering substance abuse treatment as part of his reunification plan. The social services agency is required to exercise a good faith effort to assess and address the parents' problems through appropriate reunification services. (*Earl L. v. Superior Court* (2011) 199 Cal.App.4th 1490, 1501.) The case plan for the parents " 'must be specifically tailored to fit the

11

circumstances of each family [citation], and must be designed to eliminate those conditions which led to the juvenile court's jurisdictional finding.' " (*Ibid.*)

Section 362, subdivision (d) provides the "juvenile court may direct any reasonable orders to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper . . . including . . . a direction to participate in a counseling or education program . . . ." " 'The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion. [Citations.] The court's determination in this regard will not be reversed absent a clear abuse of discretion.' " (*In re Neil D.* (2007) 155 Cal.App.4th 219, 225.)

Jason gave conflicting reports about his own drug use, including when he had last used marijuana. He admitted to having used the drug since grade school and to knowing that Ashley used marijuana while pregnant. He also appeared to the hospital staff to be under the influence marijuana at the time Ashley was admitted and failed to show up for a drug test shortly after J.R.'s birth. In light of this evidence, Jason has not shown that the court abused its discretion by ordering him to participate in substance abuse treatment.

DISPOSITION

The orders are affirmed.

12

IRION, J.

WE CONCUR:

McCONNELL, P. J.

McINTYRE, J.