Filed 5/23/22  In re L.D. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re L.D., a Person Coming Under the Juvenile Court Law. | C093774 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, | (Super. Ct. No. JD240891) |
| Plaintiff and Respondent, | |
| v. | |
| C.D. et al., | |
| Defendants and Appellants. | |

C.D. (mother) and I.D. (father), parents of the minor, appeal from the juvenile court's disposition order removing the minor from their custody and placing the minor outside the home.  (Welf. & Inst. Code, §§ 300, 395.)[1]  Finding no merit in mother and father's contentions, we will affirm the juvenile court's order.

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

BACKGROUND

Mother and father became involved with a group known as the "Time in the World church" led by James Lowery. Lowery spent most of his time at mother and father's home. Many other people lived in mother and father's home. Lowery had been convicted of sexual abuse and there were additional reports that he had committed molestation and abuse.

Lowery's mother Julia and his nephew D.A. both lived in mother and father's home and provided childcare for the minor. Julia and D.A. both knew Lowery was a registered sex offender but believed he did not pose any risk to the minor or any of the other children in the home. Mother and father knew Lowery was a sex offender but believed he had changed and they considered him to be a prophet. Witnesses reported that Lowery held church at mother and father's home at all hours and spent a great deal of time talking about sex. Witnesses also said church members had to get permission from Lowery to go places and did not listen to anyone but Lowery.

On October 9, 2020, the Sacramento County Department of Child, Family and Adult Services (the Department) filed a dependency petition on behalf of the minor pursuant to section 300, subdivisions (b) and (d). The petition alleged mother and father failed to protect the minor based on their inability or unwillingness to prevent access to the minor by Lowery, a known sex offender. The petition was later amended to conform to proof. The minor was detained and placed in protective custody and then in a relative placement.

At the detention hearing on October 15, 2020, mother and father objected to detention, arguing they maintained supervision over the minor at all times and never allowed access to the minor by Lowery. Mother's counsel confirmed that mother and father were still living in the family home and that mother had the ability to evict people from the home. The juvenile court ordered the minor detained with supervised visitation for mother and father.

2

The December 2020 jurisdiction/disposition report provided information obtained from several confidential witnesses who described Lowery's prior access to the minor in mother and father's home, his control of the adults in the home, and reports of prior abuse involving individuals other than the minor. It was reported that mother and father stopped communicating with family and former friends, became secretive, allowed Lowery to hold church services in their home, and allowed many people to sleep all over the house.

According to the report, the minor was happy and healthy with no visible signs of injury or abuse. However, the caretaker noticed several occasions when the minor exhibited troubling behavior. The first instance occurred when the caretaker was attempting to help the minor clean herself after using the restroom and the minor screamed, "Don't touch me there!" On another occasion, the minor was entertaining herself with a doll and singing to it when the minor suddenly became aggressive toward the doll, yanking it up and swinging it by one arm, telling the doll, "Bad girl! You're a bad girl." The minor then slammed the doll on the ground and began to roll up the doll's dress in the front, continuing to make statements like, "You're being a bad girl," "You get in trouble," and "get to the corner." The caregiver noticed the minor often raised her voice and pointed saying, "You go to the corner," or "you get a whoopin."

The Department recommended that the juvenile court take jurisdiction of the minor, noting mother and father continued to live with, and associate with, Lowery's family and allowed Lowery to have unlimited access to their home. Mother and father had not shown a protective capacity toward the minor and the Department was concerned mother and father were unable and unwilling to protect the minor from Lowery.

The jurisdiction/disposition hearing began on December 3, 2020. The juvenile court granted a continuance to allow the social worker to interview mother and father and provide additional information. Thereafter, the social worker made several attempts to contact mother for an interview. Mother either did not participate at the agreed-upon

time or refused to participate when she was informed she could not record the interview, could not complete the interview via e-mail, and could not complete the interview with father. The social worker's efforts to interview father were similarly unsuccessful because father stated he was working and could not provide a convenient time for the interview and failed to contact the social worker when his shift ended as agreed.

The Department reported that father had not shown up to visits for two weeks and mother consistently left the visits early (approximately 10 to 30 minutes after the start of the visits). With regard to services, the Department reported that mother claimed she and father were halfway done with services and were set to complete their counseling intake, although she did not provide a date.

The Department filed a second addendum report prior to the contested jurisdiction/disposition hearing. The Department reported the minor had undergone a special assault forensic evaluation (SAFE) interview and made no disclosure of sexual abuse during the interview.

A statement authored by the maternal grandmother stated that, as of November 13, 2020, mother and father had moved into her residence and Lowery was not allowed onto her property or to have contact with the minor. The maternal grandmother reported to the social worker that mother and father had been participating in court ordered classes, although she did not know which classes they were required to take. She did not know who was living in mother and father's home or how mother and father were paying their mortgage. She also had no knowledge about where mother and father intended to live in the future or how they planned to get their home back from Lowery and his family. She stated mother and father left their home because they felt that the Department did not want them around "those people." When asked how long mother and father would be living with her, the maternal grandmother answered, "just until." She stated mother and father no longer had a relationship with Lowery, and she denied any attempts by Lowery

4

to contact her. She did not believe Lowery still had contact with mother and father, but stated she had no way of knowing.

The social worker also spoke with the paternal grandmother, who stated she was fearful the minor would be returned home to mother and father. The paternal grandmother stated she had wanted the minor removed for quite some time, noting father had changed after meeting Lowery. She became very concerned when the church services moved into mother and father's home because there were other people residing in the home and the paternal family was not allowed to visit. Father began asking her for money. When she questioned father about Lowery, he cut off all communication with her for approximately six months.

The paternal grandmother confirmed, on February 8, 2021, that mother and father were living with the maternal grandmother. She said she did not believe mother and father had cut ties with Lowery and the church. She stated that she would sometimes have to coax the minor into visiting with mother and father as the minor often did not want to talk or visit with them.

The Department concluded that, although mother and father had moved from their home where Lowery had unlimited access, the concerns regarding placement of the minor with mother and father remained the same. There were no services available to ensure the safety of the minor if placed with mother and father. The Department also had concerns about the maternal grandmother's ability to protect the minor given the maternal grandmother's statement that mother and father would stay with the maternal grandmother "just until." The Department recommended the juvenile court sustain the petition and order that the minor remain in out-of-home placement.

The contested jurisdiction/disposition hearing commenced on February 23, 2021. The Department submitted on its reports. The juvenile court found there was clear evidence that Lowery had free and regular access to mother and father's home. The juvenile court said there was no oversight of the children at mother and father's home and

5

no firm limits placed on Lowery's access to the children. The juvenile court sustained the amended petition and found there were no services that would reduce the level of risk to the minor if returned home. The juvenile court said they had been trying to put such services in place since October 2020, but mother and father had not been cooperative with the Department or desirous of engaging in services at the level of oversight necessary. The juvenile court ordered the minor removed from mother and father with reunification services and visitation for mother and father.

## DISCUSSION

### I

Mother and father contend the juvenile court erred in removing the minor from their care and custody because there was insufficient evidence of a substantial danger to the minor if she remained in their care, and the juvenile court failed to consider other reasonable means to protect the minor without removal.

To support an order removing a child from parental custody, the juvenile court must find clear and convincing evidence "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1); see *In re Heather A.* (1996) 52 Cal.App.4th 183, 193; *In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.) The juvenile court must also "make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor" and "state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).)

"A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor

6

need not have been harmed before removal is appropriate. The focus of the statute is on averting harm to the child. [Citation.]" (*In re T.W., supra*, 214 Cal.App.4th at p. 1163.)

"The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order." (*In re Javier G.* (2006) 137 Cal.App.4th 453, 462 [applying § 361, subd. (c) within context of a § 387 removal].) When reviewing removal findings, " '[w]e review the record in the light most favorable to the trial court's order to determine whether there is substantial evidence from which a reasonable trier of fact could make the necessary findings based on the clear and convincing evidence standard.' " (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1239-1240; see *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1004-1005.) Mother and father, as the challenging parties, bear the burden of showing the juvenile court's findings and orders are not supported by substantial evidence. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

Here, there is sufficient evidence to support the juvenile court's removal order. The minor was initially removed in October 2020 due to the fact that mother and father were allowing numerous people to live in and frequent their home, including Lowery, who mother and father knew to be a convicted sex offender. Lowery had been convicted of sexual abuse of his niece and had been accused of sexual abuse by others, including his daughter and nephew. But mother and father saw Lowery as a prophet and gave him significant access to their home.

At the time of detention, mother and father argued they maintained supervision over the minor at all times and never allowed Lowery to have access to the child. Witnesses said, however, that Lowery spent most of his time at mother and father's home, slept there often, and had access to the minor. Lowery also reportedly had authority over mother and father and others in the home.

During the four months between detention and the contested jurisdiction/disposition hearing, there is little evidence mother and father made any

7

meaningful change to reduce the risk of harm to the minor. Mother continued to deny ever putting the minor at risk. Mother and father did not cooperate with the Department's efforts to interview them. They left their home with no apparent plan to get their home back from Lowery and his family. The maternal grandmother said they would live with her "just until." The paternal grandmother did not believe mother and father had cut ties with Lowery and the church.

Nevertheless, mother and father claim the Department failed to consider reasonable efforts to prevent removal, such as continued case plan services, regular Departmental assessments, unannounced home inspections, a court order that mother and father live at an approved home, a no-contact order between the minor and Lowery or Lowery's family, a babysitter approved by the Department, or in-home services to provide an extra measure of supervision. But such efforts would ultimately depend on mother and father's willingness to keep the minor from Lowery, something that appears unlikely given the evidence that Lowery has control over them.

One of the goals of dependency is to protect a child before harm takes place (*In re Cole C.* (2009) 174 Cal.App.4th 900, 918; *In re T.W., supra*, 214 Cal.App.4th at p. 1163), and "[a]lthough the court must consider alternatives to removal, it has broad discretion in making a dispositional order" (*In re Cole C.*, at p. 918; § 361, subd. (c)(1)). Under these circumstances, it was reasonable for the juvenile court to conclude the minor would be at risk of harm if returned to mother and father, and the evidence supports the juvenile court's finding that there were no reasonable means to protect the minor without removing her from mother and father's custody.

Mother and father argue the reunification services ordered were "generic enrichment classes designed to educate the parents of the risk of sexual abuse" and could just as easily have been provided through family maintenance. They further argue the findings in the Department's reports were insufficient to demonstrate that reasonable efforts were made to prevent removal, and that the Department never specified what

services were required to ensure the minor's safety in the home. Finally, mother and father argue there was insufficient evidence to support the Department's assertion that they failed to avail themselves of services or that their failure to do so correlated to endangerment to the minor such that removal was required.

To the extent mother and father are claiming the services were insufficient or unreasonable, we disagree. "Reunification services should be tailored to the particular needs of the family." (*In re M.F.* (2019) 32 Cal.App.5th 1, 13.) "The 'adequacy of reunification plans and the reasonableness of the [Department's] efforts are judged according to the circumstances of each case.' [Citation.] To support a finding that reasonable services were offered or provided to the parent, 'the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . .' " (*Id.* at pp. 13-14, italics omitted.) "The social services agency must make a 'good faith effort' to provide reasonable services that are responsive to each family's unique needs. [Citation.] 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' [Citation.]" (*In re J.E.* (2016) 3 Cal.App.5th 557, 566.)

Pursuant to the juvenile court's order, the Department provided mother and father with a case plan that included counseling and mental health services (individual counseling and sexual abuse counseling), parenting education classes, and substance abuse testing upon suspicion of substance use. The service objectives required mother and father to comply with all juvenile court orders and demonstrate an ability and willingness to protect the minor from physical, sexual and/or emotional abuse, ensure the minor was adequately supervised at all times, and participate in a mental health assessment to address any mental health needs. However, mother and father did not

9

cooperate with the Department. While mother claimed she and father had completed half of their services, the social worker was unable to confirm that claim. Counseling had not yet started.

Mother and father argue the removal order encroached on their constitutional freedom because it linked the risk of harm to their relationship with their pastor and church, dictating mother and father's decisions pertaining to the practice of their chosen faith and consequent association. But the juvenile court did not rest its dispositional orders on mother and father's faith, nor did it comment on mother and father's religious beliefs. Rather, the juvenile court's determination of harm and the absence of reasonable alternatives to avoid removal was based wholly on the danger presented by Lowery, a sex offender convicted of sexually abusing a child, and on those individuals who denied any risk of harm to the minor.

There was sufficient evidence to support the juvenile court's order removing the minor from mother and father's care and custody.

## II

Mother and father next contend the minor was detrimentally impacted by the removal order.

The juvenile court recognized that physical removal of a minor from her parents can cause emotional harm, noting it considered that fact when analyzing whether there was sufficient evidence to detain the child and whether it was appropriate to continue removal of the child from her parents. However, while the record confirms that the minor became emotional at the end of the first visit and wanted to leave with her parents, the record also makes plain that after a while the minor was less willing to visit or talk with them and had to be coaxed into doing so. Thus, the record indicates the minor was not traumatized.

In any event, as discussed at length in part I of the Discussion *ante*, the evidence weighed against possible alternatives to removal.

In addition, mother and father claim the juvenile court abused its discretion when it ordered them to undergo a mental health assessment.

"If a child is adjudged a dependent child of the court on the ground that the child is a person described by Section 300, the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child, including medical treatment, subject to further order of the court." (§ 362, subd. (a); see *In re Silvia R.* (2008) 159 Cal.App.4th 337, 347.)

"At a disposition hearing, the court may order reunification services to facilitate reunification between parent and child. 'The court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion. [Citations.] We cannot reverse the court's determination in this regard absent a clear abuse of discretion. [Citation.] [¶] The reunification plan " 'must be appropriate for each family and be based on the unique facts relating to that family.' " [Citation.] Section 362, subdivision (c) states in pertinent part: "The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the minor is a person described by Section 300." [Citation.] The department must offer services designed to remedy the problems leading to the loss of custody. [Citation.]' [Citation.]" (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 454.)

In making its order for reunification services, the juvenile court has "an obligation to determine the best way to tackle [mother and father's issues]." (*In re Neil D.* (2007) 155 Cal.App.4th 219, 225.) Under the circumstances, the juvenile court ordered the Department to provide reunification services, including professional counseling to address sexual abuse, victimization, exploitation, and other issues deemed appropriate by a therapist, as well as a mental health assessment to ensure reunification services were tailored to mother and father's specific needs. Mother and father did not object to the

11

ordered services or the assessment.  On this record, we do not find that the juvenile court
" 'exceeded the limits of legal discretion by making an arbitrary, capricious, or patently
absurd determination.'  [Citation.]"  (*In re Alexis E., supra*, 171 Cal.App.4th at p. 454.)

## DISPOSITION

The juvenile court's order is affirmed.


_____/S/_____
MAURO, J.

We concur:


_____/S/_____
ROBIE, Acting P. J.


_____/S/_____
RENNER, J.