Filed 5/6/26  In re E.H. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re E.H. et al, Persons Coming Under the Juvenile Court Law. | B346546 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP07130E–J) |
| Plaintiff and Respondent, | |
| v. | |
| LILIANA P., | |
| Defendant and Appellant. | |

APPEAL from the findings and order of the Superior Court of Los Angeles County, Juan M. Valles, Juvenile Court Referee. Affirmed.

Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Liliana P., mother to six children, challenges the juvenile court's order that she complete a 26-week domestic violence program for victims. She contends the trial court should have allowed her to address the issue in individual counseling, which was also ordered, instead of compelling her to attend a separate class that created "an undue burden" on her and was "excessive and not necessary." We affirm.

### A. *Prior Case*

On November 5, 2019, the Los Angeles County Department of Children and Family Services (Department) filed a dependency petition on behalf of E.H. and her three siblings because of domestic violence between Mother and Father. The petition also alleged Mother failed to protect the children by allowing Father to reside in the home in violation of a criminal protective order that Father was not to have contact with Mother or the child E.H. It was alleged Father had been convicted of threatening a crime with intent to terrorize. A criminal protective order against Father protected Mother and E.H. and allowed peaceful contact between the parents only for the safe exchange of the children and any court-ordered visitation. The protective order was set to expire on December 27, 2025. The juvenile court sustained the allegations, ordered family reunification and maintenance services and on May 24, 2021, closed the case with an exit order granting legal and physical custody of the children to Mother and ordering supervised visitation for Father.

B.    *Current Case*

Five years later, on January 15, 2025, the Department filed a dependency petition on behalf of (now) six children with the sole allegation that Mother and Father had engaged in domestic violence and Mother had failed to enforce the criminal protective order, subjecting the children to substantial risk of harm.

On March 26, 2025, the Department filed a first amended petition. The amended petition alleged Mother and Father have a history of engaging in violent altercations. In 2024, Father threw a cup at Mother which hit one of the children. On a prior occasion, Father pushed mother, inflicting a laceration on her head. Father's prior criminal history was alleged as well as his history of substance abuse and current use of marijuana and alcohol. Father's violent conduct in violation of the protective order and substance abuse rendered him incapable of providing regular care for and endangered the children. Mother failed to enforce the protective order and, with knowledge of Father's substance abuse, allowed him unlimited access to the children, endangering the children. The children's ages ranged from two months to 11 years old.

The children and Mother were interviewed prior to the adjudication hearing. Mother admitted verbal arguments with and cursing but denied domestic violence. Some, but not all, of the children stated they witnessed domestic violence in the home and contradicted Mother's statements that Father was not permitted in the home. Their statements changed as each was reinterviewed after the detention hearing. Four of the children later stated Father stayed overnight at their home several times a week. One child recanted his earlier observation of domestic violence between the parents while another child elaborated on

3

his observations of his parents hitting and pushing one another while fighting. Mother continued to deny domestic violence, believed the children were lying to DCFS about physical violence in the home, and was not interested in a voluntary case management program because she had completed services in the prior dependency case and Father had done nothing wrong.

At the combined jurisdiction and disposition hearing on May 27, 2024, the juvenile court sustained the first amended petition as pled. The court found the parents' denials not credible, relied on the children's initial statements supporting the domestic violence allegations in the petition, linked Father's violent conduct to his ongoing substance use, and found that given the parents' minimization of the impact of domestic violence, the risk to the children could not be mitigated sufficiently to merit dismissing the allegations of domestic violence. The court declared the children dependents of the juvenile court, ordered them removed from Father and placed with Mother, and granted family maintenance services to Mother and enhancement services to Father.

The Department had recommended several separate programs as part of Mother's case plan. Mother asked the court to order her to participate in individual counseling only where all her issues could be addressed together. Mother argued she was the sole provider of six children and it would be incredibly difficult to timely complete a more comprehensive case plan.

In response, the juvenile court struck a parenting program recommended by the Department from Mother's case plan but ordered her to attend a 26-week support group for domestic violence victims and to attend individual counseling. This appeal followed.

4

## DISCUSSION

A. ***Applicable Law***

Welfare & Institutions Code section 362, subdivision (a), provides that the court "may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child." Pursuant to section 362, subdivision (d), the court "may direct any reasonable orders to the parents . . . of the child" including to participate in a counseling or education program "designed to eliminate those conditions that led to the court's finding that the child is a person described by section 300." (*Id.*, subd. (d).) These statutes "have been broadly interpreted to authorize a wide variety of remedial orders intended to protect the safety and well-being of dependent children." (*In re Matthew M.* (2023) 88 Cal.App.5th 1186, 1196.)

B. ***Standard of Review***

The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion. (*In re Neil D.* (2007) 155 Cal.App.4th 219, 225.) The court's order will not be reversed absent a clear abuse of discretion. (*Ibid.*) A court exceeds the limits of legal discretion if its determination is arbitrary, capricious or patently absurd. The appropriate test is whether the court exceeded the bounds of reason. (*In re L.W.* (2019) 32 Cal.App.5th 840, 851.)

C. ***Analysis***

Here, the issue that brought the family within the jurisdiction of the juvenile court was domestic violence between the parents endangering the physical welfare of the children.

5

Mother does not challenge the juvenile court's findings in that regard. Nor does she challenge the findings that she failed to protect the children by allowing Father to have unlimited access to them in the home, despite the existence of a criminal protective order based on prior domestic violence between them.

The juvenile court's order that she participate in 26 weeks of domestic violence victim counseling targeted the exact problem that precipitated the dependency petition. Domestic violence was a recurring problem for this family. Despite her undisputed devotion to her children, Mother was unable or unwilling to safeguard the safety of her children against Father and to find a way to stop the cycle of violent altercations with Father. That the juvenile court believed a support group program of counseling focused exclusively on domestic violence victimization would be of benefit was not outside the bounds of reason. That Mother had already completed domestic violence or similar programs in the past was immaterial—the problem was still endemic.

Mother cites two cases for the proposition that the juvenile court's order constitutes an abuse of discretion: *In re Jasmin C.* (2003) 106 Cal.App.4th 177 and *In re K.T.* (2020) 49 Cal.App.5th 20. Neither is dispositive. In both cases, the parent ordered to participate in services was nonoffending and the court of appeal found that the nonoffending parent was either already effectively meeting the needs of the child (*In re K.T.,* at p. 25) or was the victim of stereotyping by the juvenile court (*In re Jasmin C.,* at pp. 181–182). Here, Mother was an offending parent who was now on her second round of domestic violence adjudications.

Mother contends the juvenile court should have taken into account the "undue burden" placed on her by being compelled to engage in both individual counseling and a domestic violence

course for victims. The juvenile court did consider her concern when it struck a parenting course from her case plan. But Mother was still in denial that domestic violence was an issue for her family. The fact remains that the juvenile court acts in the best interests of the children and curtailment of the domestic violence between the parents was in their best interest. (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."]; *In re T.V.* (2013) 217 Cal.App.4th 126, 134 [Both common sense and expert opinion indicate spousal abuse is detrimental to children. Domestic violence impacts children even if they are not the ones being physically abused, because they see and hear the violence and the screaming.].) The juvenile court was not required to accede to Mother's worries about undue burdens if it found, as it implicitly did here, that the benefit of more and targeted domestic violence education outweighed her other concerns.

## DISPOSITION

The findings and order of the juvenile court are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

WILEY, J.                    VIRAMONTES, J.

7