Filed 10/14/15  In re Charlene S. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re CHARLENE S., a Person Coming Under the Juvenile Court Law. | B261833 |
| | (Los Angeles County Super. Ct. No. CK81593) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| JEROME S., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Teresa Sullivan, Judge.  Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Jerome S. appeals from the juvenile court's finding and order declaring his infant daughter, Charlene S., a dependent child of the court under Welfare and Institutions Code section 300, subdivision (b),[1] and removing her from his custody after it had sustained an allegation his history of substance abuse and current use of marijuana placed Charlene at substantial risk of serious physical harm. He also appeals from the court's orders directing him to participate in family reunification services. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Infant's Detention*

Jerome is the presumed father of two daughters born to Crystal K. Jerome and Crystal came to the attention of the Los Angeles County Department of Children and Family Services (Department) in October 2013 when their older daughter, A.S. (born in September 2013), was detained because of both parents' substance abuse. The juvenile court found A.S. had been placed at substantial risk of physical harm by Jerome's history of substance abuse, then-current abuse of alcohol and related criminal convictions and Crystal's admitted use of methamphetamine throughout her pregnancy. Jerome was granted family reunification services, but Crystal was not.[2] Jerome was ordered to submit to drug testing and attend Alcoholics Anonymous (AA) meetings.

The section 300 petition involving A.S. was pending when Charlene was born in September 2014. The Department received a referral reporting Crystal had given birth after failing to appear for several prenatal care appointments and testing positive repeatedly for methamphetamine and marijuana. Contacted by a social worker, Crystal denied she was using drugs and claimed she had been sober during the last two months of her pregnancy. Jerome also denied using drugs. Although the couple had been living

---

[1]     Statutory references are to this code.

[2]     Crystal, herself a former dependent of the juvenile court, was the mother of two older children detained by the Department in 2010 due to her drug abuse. Crystal, who was only 20 years old at the time, failed to reunify with those children; and her parental rights were terminated in 2011. Crystal is not a party to this appeal.

2

together before Charlene's birth, Jerome said Crystal planned to move out of their home so he could parent Charlene.

Department records revealed Jerome, who was 50 years old, had a lengthy criminal history beginning in the 1980's that included drug-related arrests and convictions. After multiple drug, vehicle and robbery offenses, he was sentenced in 2000 to a term of 15 years in state prison. He was paroled in 2013 and shortly thereafter arrested for driving under the influence of alcohol. Although the charges were dismissed, he was found to have violated the terms of his parole and was required to attend drug treatment. At the dependency hearing for A.S. immediately preceding Charlene's birth, the Department had reported Jerome was only in partial compliance with his case plan: He had tested positive for marijuana in August 2014 and had also submitted diluted tests.[3] The Department did not intend to recommend A.S. be returned to his custody at the review hearing scheduled for October 2014.

The Department detained Charlene and placed her with Jerome's aunt, who was also the caregiver for A.S. On September 26, 2014 the Department filed a section 300 petition on behalf of Charlene, alleging Crystal's and Jerome's drug use placed the child at substantial risk of harm. (§ 300, subd. (b).) With respect to Jerome, the petition alleged he had a history of substance abuse, including alcohol, a criminal history of convictions related to drug and alcohol abuse and was a current abuser of marijuana, which rendered him incapable of providing regular care and supervision of the child. Further, A.S. was currently a dependent of the court, also due to Jerome's substance abuse. At the detention hearing the court detained Charlene from her parents' custody and ordered monitored visitation for Crystal and unmonitored visitation for Jerome.

2. *Jurisdiction/Disposition Proceedings*

In the jurisdiction/disposition report prepared for an October 27, 2014 hearing, the Department reviewed Jerome's compliance with drug testing and treatment ordered in A.S.'s case. According to the report, Jerome had tested positive for marijuana on April 9,

_____

[3]     Both parents submitted to on-demand drug tests days after Charlene's birth. Crystal tested positive for marijuana; Jerome tested negative for all controlled substances.

18 and 22, as well as August 21, 2014. He had missed seven scheduled drug tests since January 2014, and three tests were reported as diluted. He tested negative on 21 occasions, including four dates in September 2014 and two in October 2014. Jerome admitted smoking marijuana in April 2014 and having a medical marijuana card but claimed he had not otherwise used drugs in 17 years. He speculated the positive test in August 2014 resulted only from contact with others who were smoking. He told a Department investigator he knew Crystal had used drugs but claimed she did not use them around him and he had not known she used them during her pregnancy. Crystal denied Jerome was an alcoholic or drug abuser and said he smoked marijuana only occasionally and never around her or children. She and Jerome no longer lived together but they wanted to reunify with Charlene.

Jerome's aunt, with whom both children were placed, admitted she was concerned about Jerome's drinking and the people he might be around. She had raised his two older sons (now adults) and wanted to see him try to raise Charlene; she told the worker she would intervene if she thought it necessary. Asked if Jerome was currently using marijuana and somehow avoiding positive results on the tests, she declined to answer. She also declined to say whether she thought he was using other drugs.

Jerome's parole agent reported he had been cooperative with supervision and had been testing negative for drugs. His parole had been extended in May 2014, however, due to his DUI arrest and positive test for cocaine in July 2013.

Based on Crystal's "pervasive" substance abuse, the Department recommended she not receive reunification services. With respect to Jerome, the Department expressed concern about his long history of drug and alcohol abuse, his sporadic testing and his untruthfulness about past marijuana use. The Department recommended Jerome receive family reunification services and continue to submit to regular drug testing.

At the combined review hearing for A.S. and jurisdiction hearing for Charlene, the court found Jerome was not in compliance with the case plan for A.S., notwithstanding

4

his submission of certificates of completion of drug abuse and parenting programs at Orion House,[4] and ordered his family reunification services terminated.

The court continued the jurisdiction hearing for Charlene to December 1, 2014. A supplemental report prepared for that hearing recounted a November 2014 episode in which the Department investigator made an unannounced visit to Jerome's apartment. After ringing the doorbell, the investigator saw the door of the apartment open slightly and then slowly shut again. The investigator called Jerome, who said he was not at home. Asked whether anyone at the apartment might have opened the door, Jerome suggested his dog had pushed the door. The investigator then drove to Crystal's address, but the apartment number given by Crystal did not exist. Jerome arrived at the complex. When he saw the investigator, he moved back to his car as if he wanted to avoid speaking with her. The investigator approached him and asked where Crystal lived. Jerome answered he did not know and claimed he was there to visit a friend. He entered a unit on the second floor, while the investigator called Crystal. Crystal, who said she was not at the complex, became agitated and claimed she had only lived there a few days. The investigator later saw a man who smelled strongly of marijuana leave the apartment Jerome had entered. Called again, Jerome stated he would not meet with the investigator because his friend did not want to become involved.[5]

The supplemental report also stated Jerome had visited Charlene only twice during November and had infrequently called his aunt, a report verified by the aunt and a family friend. Based on this information the Department wrote, "The child Charlene is very young, only months old, and is in need of consistent, ongoing care. The Department expresses major concern that father is in need of parent training in infant care before the child can be safely maintained in his home. Further, father has stated to [the investigator] that he will put the child in daycare while he is working, but does not present as having a

---

[4]    The Orion substance abuse program allowed participants to sign a waiver allowing them to use marijuana. Jerome tested positive for marijuana once during the program.

[5]    Jerome tested negative for controlled substances five times during October and November 2014.

5

clear plan for the child's daily care and supervision. It is possible that father is not aware of the amount of effort and time an infant needs for care." The Department also concluded it was "highly likely" Jerome and Crystal were involved in an ongoing relationship and were evasive and hostile to questioning about their living situations. In light of these facts, as well as the termination of reunification services to Jerome in A.S.'s case, the Department recommended the court not provide services to assist the parents' reunification with Charlene and to instead set a date for termination of parental rights and selection and implementation of a permanent plan for Charlene.

At the December 1, 2014 hearing Crystal submitted a waiver of rights form. Jerome proceeded to adjudication and testified he did not consider himself to be an addict and had last used cocaine 17 years earlier. He insisted he had also not used marijuana for the last six or seven months or consumed alcohol since his DUI arrest in August 2014. He could not explain his 2013 positive test for cocaine. He reported he had attended a 30-day substance abuse program imposed because of his violation of the terms of his parole. He also attended a 90-day program at Orion House following his DUI arrest. He submitted to monthly testing with his parole officer and had attended AA meetings once or twice a week since his arrest.[6] He denied living with Crystal since March 2014 and said he was visiting with Charlene at least once a week at the home of his aunt. If Charlene were placed with him, he would use the referrals provided by the Department to find child care for her while he worked. Jerome's parole officer testified he had been a model parolee since his DUI arrest but admitted he was not aware Jerome had a medical marijuana card.

The contested hearing resumed December 3, 2014. Jerome's counsel opposed a finding of jurisdiction, arguing there had been no showing he was a current abuser of marijuana or alcohol and that the Department's concerns were speculative. Charlene's attorney joined with the Department in asking the court to sustain the section 300,

---

[6]     Notwithstanding his record of attendance, Jerome could not say how far he had progressed with AA's 12-step program and acknowledged he had not been working the program.

6

subdivision (b), allegation against Jerome.  The court agreed and sustained the count: "The father's record and background [are] clear.  This is an individual who has a . . . criminal lifestyle that dates back many, many years.  Most of the convictions [involve] drugs.  And while [he] does appear, as his parole officer said, to be a model parolee at this time, . . . the court is hopeful that he would focus his efforts on his sobriety and case plan, as he has two children now in the system . . . .  I did find that [Jerome's] credibility . . . was questionable, and that the inconsistency, dilutes and positive tests for cocaine in the recent past . . . provide adequate evidence for the burden of proof at these proceedings.  The failure of father to visit with the child on an ongoing basis during this time of review also did add to the court's conclusion that this risk is current and ongoing."

Proceeding to disposition the court declared Charlene a dependent of the court, ordered her removed from the parents' custody and ordered Jerome receive family reunification services.  The court also stated it did not consider Orion House to be an acceptable program because it permitted marijuana use.  The court ordered Jerome to attend a drug and alcohol program, submit to drug testing and attend developmentally appropriate parenting classes and individual counseling.  Crystal was denied formal reunification services.

## DISCUSSION

1. *Governing Law and Standard of Review*

The purpose of section 300 "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm."  (§ 300.2; see *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.)  Section 300, subdivision (b)(1), allows a child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care

7

for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

Although section 300 generally requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396; *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824), the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The court may consider past events in deciding whether a child currently needs the court's protection. (*Ibid.*) A parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O.* (2002) 103 Cal.App.4th 453, 461; accord, *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216.)

In addition, the Legislature has declared, "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child. Successful participation in a treatment program for substance abuse may be considered in evaluating the home environment." (§ 300.2.) Exercise of dependency court jurisdiction under section 300, subdivision (b), is proper when a child is "of such tender years that the absence of adequate supervision and care poses an inherent risk to [his or her] health and safety." (*In re Rocco M., supra,* 1 Cal.App.4th at p. 824; see also *In re Christopher R., supra,* 225 Cal.App.4th at p. 1220 [a finding of substance abuse by a parent of a child under six years old is prima facie evidence of that parent's inability to provide regular care resulting in a substantial risk of harm].)

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely

determine if there are sufficient facts to support the findings of the trial court.'"'"' (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find that the order is appropriate. (*Ibid.*; *In re Drake M.* (2012) 211 Cal.App.4th 754, 763; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

2. *Substantial Evidence Supports the Juvenile Court's Jurisdiction Finding*

Cases finding a substantial physical danger to a child "tend to fall into two factual patterns. One group involves an *identified, specific hazard* in the child's environment— typically an adult with a proven record of abusiveness. [Citations.] The second group involves children of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety." (*In re Rocco M., supra,* 1 Cal.App.4th at p. 824.)

This case plainly falls in the second group. At the time of adjudication Charlene was three months old. Jerome had fathered at least three other children but had never parented any of them. He had a lengthy history of drug and alcohol abuse, as well as a serious criminal record that included drug-related offenses. While his negative tests suggested he was on a path to recovery, the incidence of no shows, diluted tests and occasional positive tests amply supports the juvenile court's concern he had not fully committed himself to sobriety.

Relying on cases distinguishing between drug abusers and incidental drug users, Jerome argues there was insufficient evidence he was a substance abuser who is incapable of providing regular care for Charlene. (See, e.g., *In re Drake M., supra,* 211 Cal.App.4th at p. 764 ["jurisdiction based on 'the inability of the parent or guardian to provide regular care for the child due to the parent's . . . substance abuse,' must necessarily include a finding that the parent at issue is a substance *abuser*"]; *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1001-1003 [no evidence mother's use of marijuana and methamphetamine caused her to neglect daughter, who was a "healthy, happy preteen," had no behavioral or discipline issues, attended school regularly and wanted "'to go back

9

with [her] mom'"].)  In *Drake M.* the court held "a finding of substance abuse for purposes of section 300, subdivision (b), must be based on evidence sufficient to (1) show that the parent or guardian at issue had been diagnosed as having a current substance abuse problem by a medical professional or (2) establish that the parent or guardian at issue has a current substance abuse problem as defined in [The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th rev. ed. 2000) (DSM-IV-TR)]."  (*Drake M.,* at p. 766.)

The distinction made in these cases is instructive, but by no means dispositive.  In *In re Christopher R., supra,* 225 Cal.App.4th at page 1218, this court "recognize[d] the *Drake M.* formulation as a generally useful and workable definition of substance abuse for purposes of section 300, subdivision (b)," but held it was "not a comprehensive, exclusive definition mandated by either the Legislature or the Supreme Court."  (*Ibid.*) We also noted the definition of "'substance abuse'" had been replaced with the more broadly defined classification of "'substance use disorders'" in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5) published after *Drake M.* (*Christopher R.,* at p. 1218, fn. 6.)  Jerome's history of drug use and drug-related arrests certainly falls within the scope of a substance use *disorder*.  Based on its distrust of Jerome's credibility—a concern shared by the Department—the juvenile court's finding of jurisdiction was supported both by the evidence of Jerome's continuing drug use and by the court's wholly appropriate concern that an infant requires dedicated care not demonstrated by Jerome's previous parenting experiences.

3. *Substantial Evidence Also Supported the Disposition Order Removing Charlene from Jerome's Custody*

Section 361, subdivision (c)(1), authorizes removal of a child from his or her parent's custody only if the juvenile court finds by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being" of the child if the child were returned home and "there are no reasonable means by which the [child]'s physical health can be protected without

10

removing" the child from his or her parent's custody.[7] "The parent need not be dangerous and the child need not have been actually harmed for removal to be appropriate. The focus on the statute is averting harm to the child. [Citations.] In this regard, the court may consider the parent's past conduct as well as present circumstances." (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917; see *In re Christopher R., supra,* 225 Cal.App.4th at pp. 1215-1216; *In re A.S.* (2011) 202 Cal.App.4th 237, 247.)

The facts discussed support not only the juvenile court's jurisdiction findings but also its removal order. A "parent's current understanding of and attitude toward the past conduct that endangered a child" is relevant when the court evaluates risk. (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1025-1026.) Jerome had recently failed to reunify with A.S., and his sporadic visits with Charlene, for whom he had never provided primary care, belied his statements affirming his commitment to parenting her. He had also failed to make plans for her care during the hours he worked, and his speculation about the ready availability of child care was, at a minimum, uninformed. His resistance to Department oversight only made it more difficult for the court to risk issuing a home-of-parent order. The evidence thus adequately supports the removal order.

---

[7]  "The burden of proof at the jurisdiction phase in the juvenile court is preponderance of the evidence; the burden of proof at disposition is clear and convincing evidence. (§ 355, subd. (a) [jurisdiction findings by preponderance of evidence]; § 361, subd. (c) [disposition findings by clear and convincing evidence].) Nonetheless, we review both jurisdiction findings and the disposition order for substantial evidence. (See *Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880-881 ['The "clear and convincing" standard . . . is for the edification and guidance of the trial court and not a standard for appellate review. [Citations.] "'The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal.'"'].)" (*In re Christopher R., supra,* 225 Cal.App.4th at p. 1216, fn. 4.)

4. *The Juvenile Court Did Not Abuse Its Discretion by Directing Jerome To Participate in Drug Treatment and a Parenting Class*

Jerome contends the juvenile court abused its discretion by requiring him to participate in another substance abuse program and parenting class even though he had completed comparable programs a year earlier.

The child's best interest is the primary concern of the juvenile court, and it may make "'any and all reasonable orders to the parents or guardians' to ameliorate the conditions that made the child subject to the court's jurisdiction." (*In re Neil D.* (2007) 155 Cal.App.4th 219, 224, quoting § 362, subd. (c); accord, *In re Carmen M.* (2006) 141 Cal.App.4th 478, 486.) This provision and others in the Welfare and Institutions Code "have been broadly interpreted to authorize a wide variety of remedial orders intended to protect the safety and well-being of dependent children . . . ." (*Carmen M.*, at p. 486; accord, *Neil D.,* at p. 224.) We review the juvenile court's disposition order under the abuse of discretion standard: "The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion." (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474; accord, *Neil D.,* at p. 225.)

The juvenile court did not abuse its discretion in requiring Jerome to attend an additional substance abuse program and another parenting class. Although we are cognizant of the strain these orders may have imposed on Jerome, there are sound reasons for the order: The court found Jerome's assertion of his recovery not to be credible, and his aunt appeared to corroborate the Department's suspicion he was somehow cheating on the drug tests to yield negative results. Recovery from substance abuse is not a "one and done" enterprise. The court reasonably concluded Jerome's commitment was shallow and his child would benefit from Jerome's additional focus on his sobriety. Similarly, Jerome had failed to demonstrate a parental orientation in his visits with his daughter. By directing him to participate in another parenting program, the court was

12

providing Jerome an opportunity to demonstrate the sincerity of his commitment to Charlene.

## DISPOSITION

The orders of the juvenile court are affirmed.


PERLUSS, P. J.


We concur:


ZELON, J.


SEGAL, J.