Filed 12/5/22  In re Adilynn A. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re ADILYNN A., a Person Coming Under the Juvenile Court Law. | B317156 <br><br> (Los Angeles County Super. Ct. No. 21CCJP04836A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CHRISTIAN A. et al., <br><br> Defendants and Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County, Terry T. Truong, Juvenile Court Referee. Affirmed.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant Christian A.

Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant Maria C.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Christian A. and Maria C., the parents of 19-month-old Adilynn A., appeal the jurisdiction findings supporting the juvenile court's order declaring Adilynn a dependent child of the court, contending the findings were not supported by substantial evidence. Christian also appeals the disposition order requiring him to submit to random drug testing. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Adilynn's Detention*

On August 28, 2021 the Los Angeles County Department of Children and Family Services received a report that Christian and Maria had engaged in a physical altercation in the early morning hours while Adilynn was in another room of their home. When interviewed by a Department social worker 10 days later, Christian explained he and Maria had been in a relationship for a year and a half and lived with Christian's parents and brother. On the day of the altercation Christian and Maria had taken Adilynn to the home of Maria's father for dinner. Maria drank five or six beers and was intoxicated. When they returned home, they argued about money. Christian asked Maria to leave the home so the fight would not escalate. After taking a short walk Maria returned. According to Christian, Maria became extremely agitated and climbed onto a second story windowsill, threatening

2

to jump. When Christian pulled Maria inside the home, she bit his arm, causing him to bleed. Christian's mother, Carmen A., called the police, who arrested Maria for domestic violence. Adilynn was in another room during the incident. Christian told the social worker a similar domestic violence incident had occurred in December 2020, but he did not provide any details.

Maria's account of the incident was almost identical to Christian's. Maria admitted she bit Christian when he pulled her off the windowsill. Maria denied having any suicidal thoughts; she insisted she had climbed onto the windowsill only to get attention. According to the police report Maria had told the responding police officers she had climbed off the windowsill on her own and then Christian pinned her down. The officers observed a bruise on Maria's left shoulder and a small scratch on her right shoulder.

Los Angeles Police Department call logs contained accounts of two additional recent incidents involving the family. According to the logs, on June 23, 2021 Maria attempted suicide by taking unknown prescription drugs. Maria told responding officers she was not suicidal. She denied taking any medications but admitted she had been drinking. She refused medical treatment, and police determined she did not meet the criteria for a psychiatric hold. The record does not indicate where the incident occurred or whether Adilynn was present.

Another incident occurred on July 31, 2021. One of Christian's parents called the police because Christian and Maria were "throwing items, yelling, and broke a window." The reporting party was fearful the argument would escalate. Christian and Maria had left by the time police arrived. Adilynn was in the home with Christian's parents.

Carmen told the social worker that Christian and Maria had verbal arguments during which they yelled, but she stated they did not physically fight. Carmen encouraged Christian to be patient with Maria because Maria had many "monsters and demons." Carmen stated Christian and Maria are "trouble" and they needed help and support. She also said Adilynn was with Maria and Christian at all times and they were very attentive parents. Carmen worked full-time, but she said, if necessary, she would assist with finding and paying for a babysitter for Adilynn.

The social worker also interviewed Maria's father, Jorge C., who stated that Maria suffers from anxiety and she "explodes." Jorge believed Maria was a good mother but needed help with her anxiety and sobriety.

Christian and Maria were both unemployed at the time of the August 2021 incident. They stated they wanted to remain in a relationship. Despite denying substance use Christian agreed to drug testing. He failed to appear for his first scheduled test and on September 16, 2021 tested positive for high levels of marijuana. Maria said she drank occasionally but denied other substance use or mental health issues. She tested negative for alcohol on September 10, 2021.

On September 22, 2021 the social worker recommended that Maria and Christian enroll in individual, parenting and domestic violence counseling and provided them with information to obtain such counseling. Maria and Christian agreed they would enroll. One week later neither parent had contacted any of the service providers, explaining they were busy with job interviews.

On September 30, 2021 the Department informed Christian and Maria it intended to seek court approval to remove Adilynn

from Maria's custody. Christian refused to enter a proposed safety plan in which Maria would move out of the home, stating Maria was the primary caregiver for Adilynn while Christian was looking for work. A few days later the parents enrolled in domestic violence, parenting, anger management, substance abuse and individual counseling.

The social worker reported Adilynn appeared healthy and comfortable with her parents. However, the Department was concerned by the couple's failure to timely enroll in services. The social worker also believed Christian's lack of insight into the harmful effects of Maria's behavior endangered Adilynn.

The Department filed a petition on October 15, 2021 pursuant to Welfare and Institutions Code section 300, subdivisions (a) and (b)(1),[1] alleging Maria and Christian had a history of engaging in violent altercations, Maria had a history of alcohol abuse and was a current abuser of alcohol, Maria had mental and emotional problems and Christian was a current abuser of marijuana. The petition alleged the parents' conduct endangered Adilynn's physical health and safety.

At the detention hearing on October 20, 2021 the court detained Adilynn from Maria and released her to Christian. Christian was ordered to submit to drug testing and enroll in individual counseling. Maria was ordered to submit to alcohol testing and enroll in programs for domestic violence, substance abuse and individual counseling. Maria's visits with Adilynn were to be monitored.

---

[1]     Statutory references are to this code.

## 2. *The Jurisdiction/Disposition Report*

The Department filed its jurisdiction/disposition report on November 29, 2021. In an interview with the Department social worker Maria admitted she had been drunk during the August 2021 incident and had "laid hands" on and bitten Christian. Maria said she "can have a problem with alcohol, but I feel that I can stop as well." She stated she was currently sober and was able to distract herself from drinking, in part because her new job kept her busy. She said Christian smoked marijuana often but not in the home. Maria reported she had "really bad" anxiety but denied being suicidal—she again claimed her attempt to jump out the second-story window was to get attention. Maria wanted to enroll in therapy and return to her family.

Christian's account of the August 2021 incident was consistent with his earlier statements. He told the social worker that he and Maria previously had only "verbal altercations but this time it got out of hand. . . . I was able to get her down [from the windowsill] and then she became angry and I was trying to restrain her and that is when she bit me." Christian did not consider the incident to be domestic violence. He insisted he and Maria did not fight in front of Adilynn. Regarding Maria's drinking, Christian stated she was not an alcoholic but "she drinks 6 to 7 tall cans of beer and a cup of hard liquor." She drinks when she gets overwhelmed, but she had stopped drinking in the month since she moved out of the family home. Christian admitted he had "an issue with marijuana. I have tried to change that and for the past [two] weeks I have not smoked any marijuana." He stated, now that he was working, he no longer had time to smoke marijuana. Christian wanted Maria to be able to return to the family home.

6

Christian and Maria registered for services in early October 2021 but were terminated from the program for nonattendance six weeks later. Maria had weekly monitored visits and daily video calls with Adilynn. The baby appeared healthy and happy.

The Department recommended Adilynn continue to be removed from Maria's custody, citing concerns about the parents' escalating confrontations and Maria's untreated mental health and substance abuse issues, which the Department believed were a contributing factor in the parents' altercations.

3. *The Jurisdiction/Disposition Hearing*

The court held a combined jurisdiction/disposition hearing on December 8, 2021. Christian's counsel argued the domestic violence allegations should be dismissed entirely or at least as to Christian because the August 2021 incident did not constitute domestic violence. Counsel also argued the substance abuse allegation regarding Christian should be dismissed because there was no nexus between his marijuana use and any risk to Adilynn. Maria's counsel likewise argued the domestic violence allegations should be dismissed, contending domestic violence was not an ongoing issue in the family. Adilynn's counsel argued the section 300, subdivision (b)(1), counts should be sustained.

The juvenile court dismissed the section 300, subdivision (a), allegation and amended the subdivision (b)(1) allegation regarding domestic violence to state the parents had a history of engaging in verbal altercations in addition to physical altercations. The court struck the reference to Maria's arrest on August 28, 2021. The court then sustained the domestic violence allegation as amended and the substance abuse and mental health allegations as pleaded. Regarding the August 28, 2021

incident, the court noted it was not the couple's first physical dispute and, even if the altercation had been caused by Maria's substance abuse or mental health issues, that did not explain Christian's participation. The court also found troubling that the family had three police contacts in two months, given that Christian and Maria had an infant in their care.

Proceeding immediately to disposition the court removed Adilynn from Maria's custody and released her to Christian. Christian was ordered to complete random and on-demand drug testing showing decreasing levels of marijuana. (His counsel had asked that drug testing be based on reasonable suspicion only.) Family enhancement services were ordered for Maria, including completion of an alcohol program, random and on-demand alcohol testing, anger management classes and a psychiatric evaluation.

## DISCUSSION

1. *Substantial Evidence Supports the Jurisdiction Finding Based on Domestic Violence Between Christian and Maria*

   a. *Governing law and standard of review*

The purpose of section 300 "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2; see *In re A.F.* (2016) 3 Cal.App.5th 283, 289; *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.)

Section 300, subdivision (b)(1), allows a child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or

8

inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child." A jurisdiction finding under section 300, subdivision (b)(1), requires the Department to prove three elements: (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness. (*In re L.W.* (2019) 32 Cal.App.5th 840, 848; *In re Joaquin C.* (2017) 15 Cal.App.5th 537, 561; see *In re R.T.* (2017) 3 Cal.5th 622, 624 ["section 300(b)(1) authorizes dependency jurisdiction without a finding that a parent is at fault or blameworthy for her failure or inability to supervise or protect her child"].)

Although section 300 requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146), the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re I.J.* (2013) 56 Cal.4th 766, 773; *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383; *In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The court may consider past events in deciding whether a child currently needs the court's protection. (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215-1216; *In re N.M.,* at p. 165.) A parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O.* (2002) 103 Cal.App.4th 453, 461; accord, *In re J.N.* (2021) 62 Cal.App.5th 767, 775 ["[e]vidence of past conduct may be probative of current conditions and may

9

assist DCFS in meeting [its burden of proof]"]; *In re Kadence P.*, at p. 1384.)

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."''' (*In re I.J., supra*, 56 Cal.4th at p. 773.) We review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find that the order is appropriate. (*Ibid.*; accord, *In re I.C.* (2018) 4 Cal.5th 869, 892.)

        b. *The Department presented sufficient evidence domestic violence between Christian and Maria placed Adilynn at substantial risk of serious physical harm*

Exposure to domestic violence may serve as the basis for a jurisdiction finding under section 300, subdivision (b)(1). (*In re R.C.* (2012) 210 Cal.App.4th 930, 941.) "''Both common sense and expert opinion indicate spousal abuse is detrimental to children.''" (*Id.* at p. 942; see *In re S.O., supra*, 103 Cal.App.4th at pp. 460-461 ["'domestic violence in the same household where children are living *is* neglect; it is a failure to protect [them] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it"]; see also *In re L.O.*

(2021) 67 Cal.App.5th 227, 238 ["[j]urisdiction is appropriate since a minor can be 'put in a position of physical danger from this violence, since, for example, they could wander into the room where it was occurring and be accidentally hit by a thrown object, by a fist, arm, foot or leg'"]; *In re T.V.* (2013) 217 Cal.App.4th 126, 135 ["[e]ven though [the child] had not been physically harmed, the cycle of violence between the parents constituted a failure to protect her"].)

Christian and Maria argue the evidence did not establish they had a history of engaging in physical violence and their behavior had not placed Adilynn at risk because she was not in the same room during their August 2021 altercation. Contrary to their protestations, the evidence demonstrated an ongoing, recent and escalating cycle of violence between Christian and Maria. Christian told the Department social worker there had been an incident in December 2020, while Maria was pregnant, that had been similar to the August 28, 2021 incident. While there are no details in the record regarding that event, neither parent disputes an altercation took place or Christian's characterization of it as similar to the August 28, 2021 incident.

Attempting to minimize the July 31, 2021 incident, Christian and Maria acknowledge it involved yelling, throwing items and breaking a window, but they argue there was no danger to Adilynn because the police log stated no weapons had been used or crime committed. Based on that report, Maria argues, "If no crime occurred, then neither father nor mother committed a battery or assault on each other," and, therefore, no finding of domestic violence can be made.

This argument betrays a fundamental misunderstanding of dependency law and the role of the juvenile court in protecting

11

children. Counsel cites no authority—indeed, none exists—supporting the assertion that dependency jurisdiction may be based on ongoing domestic violence in a family only if weapons were used or a Penal Code violation occurred or that suggests the juvenile court's evaluation of an incident must conform to the assessment made by a police officer responding to a domestic violence call (let alone to the hearsay summary of that assessment in a log). As discussed, dependency jurisdiction depends upon whether the parents' behavior presents a substantial risk of serious physical harm to the child. The evidence that Christian and Maria were throwing items and broke a window, causing Christian's parents to call police out of fear the episode would escalate, amply supported the juvenile court's reliance on the July 31, 2021 altercation as a significant episode of domestic violence.

Christian and Maria also attempt to characterize the August 28, 2021 incident as one in which Christian was trying to protect Maria from jumping out the window rather than as another act of domestic violence. This relatively benign description, however, omits the argument leading up to Maria's climb onto the windowsill, as well as the altercation that ensued after Christian pulled her down, during which Maria became angry, Christian tried to restrain her, and she bit him. As a result of the altercation, Christian had a significant bite mark on his arm (described by a social worker as approximately the size of a cigar burn on which the "skin was peeled off"), and Maria had injuries to her shoulders. The juvenile court properly considered the August 28, 2021 altercation an incident of domestic violence.

Even if they engaged in domestic violence, Christian and Maria alternatively argue, there was no substantial risk of harm

12

to Adilynn because she was not present during the incidents. However, Adilynn was in the home during two violent incidents within a 30-day period and there had been similar incidents in the past. The ongoing threat of further violence between her parents constituted substantial evidence Adilynn was at significant risk of serious physical harm. (See *In re T.V.*, *supra*, 217 Cal.App.4th at p. 134 ["[a]lthough [the child] was not present at the time, the domestic violence between the parents was ongoing and likely to continue, thus placing [the child] at substantial risk of physical harm"].)

Finally, Christian and Maria's argument that there was no current risk of harm to Adilynn by the time of the jurisdiction hearing is unpersuasive. Maria had moved out of the family home in October 2021 as a result of the Department's investigation. However, the couple remained in a relationship and expressed a desire that Maria be allowed to return to the home. It was reasonable for the juvenile court to conclude that, absent Department and court supervision, Maria would return to live with Christian and Adilynn. In addition, there was no evidence either Christian or Maria had resolved their domestic violence issues: They had attended only six and four weeks of a domestic violence program, respectively, before being terminated for nonattendance, and they did not exhibit any meaningful insight into their behavior or the danger it posed to Adilynn. Under these circumstances there was sufficient evidence to support a finding Adilynn remained at risk of harm at the time of the jurisdiction hearing.[2]

_____

[2] Because substantial evidence supports the juvenile court's jurisdiction findings regarding domestic violence as to both Christian and Maria, we need not consider their challenges to the

13

### 2. *The Juvenile Court Did Not Abuse Its Discretion by Directing Christian To Submit To Random Drug Tests*

The child's best interest is the primary concern of the juvenile court, and it may make "'any and all reasonable orders to the parents or guardians' to ameliorate the conditions that made the child subject to the court's jurisdiction.'" (*In re Neil D.* (2007) 155 Cal.App.4th 219, 224; accord, *In re K.T.* (2020) 49 Cal.App.5th 20, 24; see § 362, subd. (d) ["[t]he juvenile court may direct any reasonable orders to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out this section"].) This provision and others in the Welfare and Institutions Code "have been broadly interpreted to authorize a wide variety of remedial orders intended to protect the safety and well-being of dependent children." (*In re Carmen M* (2006) 141 Cal.App.4th 478, 486; accord, *In re Neil D.*, at p. 224.) Accordingly, the juvenile court's "broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion, permits the court to formulate disposition orders to address parental deficiencies when necessary to protect and promote the child's welfare, even when that parental conduct did not give rise

juvenile court's additional findings. (See *In re D.P.* (2015) 237 Cal.App.4th 911, 917; *In re J.C.* (2014) 233 Cal.App.4th 1, 4; see also *In re I.J.*, *supra*, 56 Cal.4th at p. 773 ["'[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence'"].)

to the dependency proceedings." (*In re K.T.,* at p. 25; accord, *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1008.) We review the juvenile court's disposition order under the abuse of discretion standard. (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474; accord, *In re Neil D.*, at p. 225.)

Christian contends there was insufficient evidence to support the juvenile court's finding that his marijuana use posed a substantial risk of serious physical harm to Adilynn and, therefore, the juvenile court abused its discretion by requiring him to submit to random drug testing. However, even in the absence of a jurisdiction finding involving a parent's substance abuse, the juvenile court may order an admitted drug user with young children to participate in drug testing. (See *In re Christopher H.*, *supra,* 50 Cal.App.4th at pp. 1007-1008 [juvenile court acted within its discretion in ordering random drug and alcohol testing even though father's substance use was not basis for jurisdiction]; cf. *In re Carmen M.*, *supra,* 141 Cal.App.4th at pp. 486-487 [juvenile court is authorized to order dependent child to participate in drug testing if reasonably related to protecting the child's safety or well-being].)

Here, Christian admitted to having "an issue" with marijuana and to smoking frequently, albeit outside the home. This was corroborated by testing that revealed high levels of marijuana in his system. Given Adilynn's young age and the court's order that she be released to Christian, the court reasonably concluded it was in the child's best interests for Christian to submit to random drug testing.

## DISPOSITION

The jurisdiction finding regarding domestic violence and the disposition orders are affirmed.

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.